**Burton LIPMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 19146.**

United States District Court E. D. New York.

June 5, 1962.

Seymour J. Bernstein, Brooklyn, N. Y., for plaintiff.

Joseph P. Hoey, U. S. Atty., by Peter H. Ruvolo, Asst. U. S. Atty., of counsel, for the United States.

RAYFIEL, District Judge.

The plaintiff commenced this action to recover damages for personal injuries which he sustained when a United States Army vehicle, operated by a civil employee of the defendant in its official business, collided with his vehicle, a 1957 Ford convertible, at the intersection of Sunrise Highway and Church Street, in Freeport, Nassau County, New York, at about 12:30 P.M. on March 14, 1958.

Sunrise Highway runs east and west and is divided by a slightly elevated mall separating eastbound and westbound traffic. Sunrise Highway, between the mall and its north curb, is 36 feet and 9 inches wide and accommodates four lanes of westbound traffic. Church Street runs north and south and is 29 feet and 2 inches wide. Main Street, like Church Street, runs north and south, and is 93 feet and 10 inches westerly therefrom. Traffic at the intersection of Sunrise Highway and Church Street is controlled by a 3-way light, suspended above the intersection approximately at its center.

Here are the facts. It had been snowing for some period prior to the accident and the pavement of both Sunrise Highway and Church Street was slushy at some points and icy at others. The plaintiff was traveling south on Church Street toward Sunrise Highway and, obedient to the traffic signal at the intersection, which was then red against southbound traffic, brought his vehicle to a stop with

its front about two feet short (north) of an imaginary line drawn in continuation of the north curb of Sunrise Highway. When the traffic light turned green in his favor he proceeded to cross Sunrise Highway. At that time the defendant's vehicle was about midway between Main and Church Streets, traveling in a westerly direction, and the plaintiff assumed, as he had the right to do, that the operator of the defendant's vehicle would bring it to a stop before it reached the Church Street intersection. Instead, he appears to have lost control thereof and it skidded on the wet or icy pavement, continued its unsteady course into the intersection and collided with the plaintiff's vehicle, which had then almost completed the crossing of the westbound roadway of Sunrise Highway. The right front of the defendant's vehicle, which weighed about eight tons, struck the left front of the plaintiff's one and one-half ton car what appears from the photographs received in evidence to have been a rather violent blow, causing considerable damage to its left front headlight assembly, left front fender and cowl.

■ The driver of the defendant's truck, though available, was not called as a witness. Instead, the Government called as its only witness of the accident one Dallari, who had been seated alongside the driver at the time of the occurrence. His testimony was implausible and unpersuasive. His unusually retentive memory of the most minute details of the progress of the truck prior to the accident, and of times, distances, parking and traffic conditions, prompts me to question at least his accuracy. It is true that in the plaintiff's testimony, too, there were occasional inconsistencies in his judgment of time and distance, but the position of his car in the intersection when struck and location of the damage thereto, together with the other factors in the case, convince me that the driver of the army truck was negligent in its operation and that the plaintiff was not guilty of contributory negligence. Accordingly, the plaintiff is entitled to judgment.

*As to damages*

A short time after the accident Dr. Rudolph Joseph, answering a call, arrived at the scene, and, as he testified, found the plaintiff seated behind the steering wheel of his car "in an almost unconscious condition. He was completely incoherent, and he was unable to make contact with people around him. He was wildly gesticulating, threshing his arms around and shouting 'my head. My head is hurting'." Dr. Joseph further testified that the plaintiff's eyes "were rolling", that he had bruises on his face, forehead and scalp, and suffered a cerebral concussion.

At Dr. Joseph's suggestion the plaintiff was removed by ambulance to Doctors' Hospital, at Freeport, where he was confined for three days, during which period, as he testified, he suffered severe headaches for the relief of which codeine was administered to him. His condition, according to the hospital report, (Exh. 1) was tentatively diagnosed as cerebral concussion, left temporal hematoma and contusions. After his discharge from the hospital he was confined to his home for some four weeks, the first four or five days of which were spent in bed. He testified that during the period that he was confined to his home he continued to have headaches, suffered from occasional vertigo or dizziness on sudden changes of posture, felt weak and tired easily. The plaintiff stated further that up to the present time he still suffers from sporadic headaches.

Two doctors testified on behalf of the plaintiff. One was the aforementioned Dr. Rudolph Joseph, who had been called to the scene of the accident and, after examining the plaintiff, had ordered that he be removed to the hospital, and Dr. Frank Pulito, a neurologist and psychiatrist who gave the plaintiff a neurological examination on April 11, 1958. The plaintiff testified that his family physician, a Dr. Parsons, treated him at the hospital and after his discharge. Dr. Parsons was not called as a witness, and there was no evidence of the nature, extent or reasonable value of his services.

Dr. Rudolph Joseph testified that as a result of the accident the plaintiff suffered a cerebral concussion and contusions of the scalp, forehead and face. He testified that he had been paid $25.00 for his services, and that this sum was fair and reasonable compensation.

Dr. Pulito testified that in his opinion the plaintiff, at the time of his examination, was suffering from what he called a "post concussion status." He also testified, in answer to a hypothetical question, that the plaintiff's present occasional headaches were likely to be permanent. He testified that he received a fee of $20.00 which was fair and reasonable compensation for his services.

The plaintiff stated that in addition to the injuries to which Dr. Joseph testified he (the plaintiff) sustained the following injuries to his teeth: *fractures of the upper and lower first right molars, a fracture of a fixed bridge, and the displacement of a gold inlay of the upper right second molar.* No dentist testified at the trial and no evidence was adduced that any dental services were performed on the plaintiff or were made necessary by the defendant's negligence. Nor was there any evidence of the reasonable value of such services.

Dr. John J. Connell testified on behalf of the defendant. He stated that he examined the plaintiff on October 27, 1959 and that he found no objective signs of injury. He testified that "He has made a complete recovery, without permanency from any injury that he may have sustained, as a result of the alleged accident."

From my observation of the plaintiff he appeared to be a very high-strung, nervous and tense individual. He has had a history of headaches and emotional instability. This is borne out by his army medical record, which was received in evidence as Exhibit "G". This record reveals that he was inducted into the army in or about November, 1956, and was discharged in or about June, 1957, after having been examined and treated in the neuro-psychiatric clinic on four occasions for "crying spells, jerky movements and emotionally unstable behavior." A certificate, dated May 17, 1957, gives the following diagnosis of his condition: "Emotional Instability Reaction." A "Report of Medical History", dated June 18, 1957, and signed by the plaintiff, contains the following statement in his own handwriting, "Have headaches and trouble sleeping." It appears, therefore, that the sporadic headaches from which he claims he is now suffering antedated the accident and were not caused by it.

What are the plaintiff's damages? He is entitled to recover his loss of earnings which I fix at $80.00 per week for a period of six weeks for a total of $480.00. He is entitled to recover his out-of-pocket medical expenses of $25.00 to Dr. Joseph, $20.00 to Dr. Pulito, and $101.70 the amount of his hospital bill, making a total of $626.70. I find that as a result of the accident the plaintiff suffered a cerebral concussion and contusions of the scalp, forehead and face, which had healed completely prior to the trial. No sequelae resulted from the cerebral concussion. The sporadic headaches from which the plaintiff claims he suffers are of psychiatric origin, and not the result of the accident involved herein, although they may have been temporarily aggravated thereby.

I have read the cases submitted by the plaintiff's counsel in his memorandum relating to the matter of damages and I find them to be completely inapposite. In each of those cases the injuries were far more extensive and serious than those in the instant case.

Accordingly, I find that in addition to the foregoing items of damages totalling $626.70 the plaintiff is entitled to the sum of $2,500.00 as compensation for the injuries, pain and suffering sustained by him as a result of the accident.

Submit, within ten days, findings of fact, conclusions of law and judgment in conformity herewith.